Good morning, Your Honors. My name is Cullen Macbeth, and I represent the appellants, Stephonze Blakeney. Your Honors, this Court has said that requiring particularity in a warrant serves at least two important functions. First, it limits the authorization for the search to the specific items for which probable cause exists. And second, it affords the subject of the search written assurance of the executing officer's authority to search and the limits of that authority. The blood draw warrant in this case vindicated neither of those interests. The warrant was sufficiently particular as to the first search that police conducted because it specified the substance that police could extract from Mr. Blakeney, his blood. But it provided absolutely no description whatsoever of the information that police could seize pursuant to the second search under the warrant, which was the analysis or testing of his blood after they drew it from his body. On its face, the blood warrant in this case permitted police officers to search his blood for any number of sensitive and highly private facts about Mr. Blakeney, ranging from his HIV status to his genetic predisposition to various diseases, information about his intelligence, his sexual orientation, his family lineage, and on and on and on. The district court understood that argument and said that she read the warrant differently, basically, that the warrant did incorporate the nature of the offense. It was fairly read so that it made clear that all you could search for was that the offense under investigation was a potential DUI, and what you could search for was evidence of that offense, a screen to see if the defendant was under the influence. Why is that not right? And this is sort of how it looked to me. So the Supreme Court in Gros and this court has said that the particularity requirement applies to the four corners of the warrant itself and not to the application or the affidavit. And so in this case, it's a little bit unusual because it's a telephonic warrant, so we don't have a separate document that is the affidavit and another document that is the warrant. We have sort of a transcript of this call, but I think the most natural reading of that transcript is that the warrant, in this case, is the final paragraph of that transcript where the court says, okay, I find there is probable cause to justify the issuance of a warrant. That is where the judge is saying, you know, here is what there is probable cause for. And in that part of the warrant, or in that part of the transcript, which is the warrant, I think, the court does not incorporate by reference what's come before. Well, it's got the language as described earlier in this proceeding based on the information communicated to me. And given, as you say, that it's not really a separate piece of two separate pieces of paper, I mean, couldn't you fairly read this to either be incorporating the part that came before it or the sort of the whole thing as being one warrant? So two points in response to that, Your Honor. One is that so this court does not have much of any case law about what kind of language is sufficient to incorporate. But in other cases, the court has come in and said there has to be expressed language of incorporation. So, for instance, in the Tracy case from the Third Circuit that we cite in our brief, it says there has to be explicit language of incorporation. And it's not enough for the judge just to say, having considered the facts presented to me, I find probable cause. That's insufficient to incorporate. I'll ask you one more question, then I will leave you alone on this. Just to be clear, because there's a warrant, we have to view all of this sort of under Leon. So the question is really, could this warrant reasonably, could we reasonably understand the warrant to either be the whole conversation or the end of the conversation, but to have incorporated the nature of the offense? So, so I think the answer is no, because I think, again, a warrant is when the judge says, here's what you have probable cause to see. And the only part of the transcript in which that happens is the end. But, but even if the court disagrees with me on that, the good faith could, you know, might apply if the affidavit itself supplied the lacking particularity. But in this affidavit, nowhere does the officer say, I wanted to draw his blood and check blood alcohol content. That's not in his presentation. But it talks about the odor of alcohol and some evidence of PCP in the context of an automobile accident. So why isn't it logical to infer that that's exactly why he's seeking the warrant? So that, I assume that is why he was searching the warrant. I'm sure that's what the magistrate judge thought as well. But the courts in this area have, have been pretty exacting. So I think the, the Grovey-Ramirez case that we cite is instructive in this regard. And in that case, the affidavit, wrote an affidavit that described his investigation into weapons and guns on a particular property. He said in the affidavit, these are the guns and explosives I want to seize. And then he applied for the warrant. And when the warrant issued, either the appian or the judge mistakenly wrote in the area where it said items to be seized, wrote the address of the house instead of the actual guns that the appian wanted to seize. And the Supreme Court said that's insufficient. They said that's plainly invalid and obviously not a good enough warrant. Even though, you know, anyone who read the affidavit in that case would know that the officer was not attempting to seize the house. He wanted to seize the guns and the explosives. But the court said that doesn't matter. You look at the face of the warrant and the warrant says he wants, he was asking permission to seize the house or granted permission to seize the house. And so it doesn't matter what, you know, a reasonable person would assume. So how does that, how's the analogy here? So the analogy here is we can assume that when Detective Steinheimer was applying for this warrant, that what he wanted to seize pursuant to the second search was a blood alcohol test. But the warrant doesn't say that and neither does the affidavit. And so even though we can infer that's what was going on, the Supreme Court says it doesn't matter. And the officer in the Groh case argued, you know, essentially what the government is arguing here, that this was a, you know, all things considered a reasonable search because the appian provided probable cause. The search did not in that case even told the subject of the search during the search, here's what I'm going to be seizing, or at least he claims he did. Well, the additional thing that happens right before the magistrate judge gives the warrant is he says at the hospital, did anybody ask Mr. Blakeney to consent to a test to determine alcohol? Which suggests that that's what he's giving permission for, right? It probably does. But again, the courts, I mean, Groh, I think it sounds very technical and formalistic, but that's the line the Supreme Court has drawn, is that it's not enough to just say, well, we can infer or assume what the warrant was for. You know, but in the Groh case, the warrant literally only had the address of the house. Like in this case, either, even assuming that the warrant is no more than what appears in that last paragraph on page 49 where he says, okay, I find that there is probable cause, it still does have that language of incorporation, language, something in the ballpark of language of incorporation. It's not as though the Groh warrant said, you know, you can search this house based on the facts that we've been talking about involving some weapons, right? Like this one says, there's at least an argument to be made in this case that was not available in Groh that you can read this warrant as actually being fairly and plainly read as about a possible DUI-related crash. And that's what the district court held. Yes, Your Honor. And I think, you know, again, this court doesn't have much case law in the incorporation language, but other courts have been quite strict about it. And it's not enough to simply say, you know, based on the information that was presented to me, that's what we had in the Tracy case from the Third Circuit. Tracy also cites opinions from other courts, including the Eighth Circuit, and the George case from the Second Circuit. But you know, the thing is, I'm not sure, I know that this is your client in this case, but you're an assistant federal public defender, right? So you have clients in other cases, and you want, you want the police to get warrants, right? Yes, Your Honor. If we're throwing out warrants right and left, that's counterproductive. That is sending a signal to them, get a warrant, because they will have some incredibly minuscule flaw in it. Well, respectfully, Your Honor, the court said in Groh that this is not a formality. They use that word. It's not a formality. The particularity requirement serves a high function, and that function can't be served if the warrant does not include, you know, a description of the items that can lawfully be seized. And I, we do want police to... Well, it did have a description. It's the blood. Well, as to the first search, but the Supreme Court has held in Skinner, and this court held in Davis, that when you are testing blood for some kind of information, you're actually engaging in two separate searches. So can I ask you about that? Was that argument actually presented to the district court, this notion of two separate searches? Not that theory, Your Honor. So why is it, why is it a valid theory now on appeal? So we raised a particularity argument. Right, but it was a very different particularity argument. It was a different, it was a different particularity argument. But two points. One is, and I, if the government had raised this issue, I would have a citation for you. But the law is that once you raise a claim in district court, you can present any argument that you wish in defense of that claim on appeal. And I think a particularity claim is a discreet claim. This is a separate argument in support of that. But regardless, the government has not suggested waiver. They haven't suggested they've been prejudiced by our failure to raise this below and by having to defend it on appeal. So to the extent the court thinks there was a waiver, I think the government has no intention. I see I'm almost out of time. So I'd like to transition just for a minute to the second warrant in this case, which was for the event data recorder. In this case, the event data recorder warrant describes basically a tort, a crash, a car accident in which somebody may have been negligent or, you know, there was a collision, but it gives no reason to believe that a crime had actually occurred. And if these facts are sufficient to get a warrant for an EDR where there's no suggestion of criminality, then as a matter of course, police will be able to get warrants for an EDR every time there's a crash. And a basic prerequisite of any warrant is that police have probable cause to believe a crime occurred. And this affidavit simply provides no information about crime. In fact, it suggests that the police don't have a theory of what happened. It says we, you know, we want to get a warrant for this case so we can determine any causes of the accident, not because we think we know what they are and we want the evidence to back it up, but just because we are trying to determine what the causes of this accident were. And that is, you know, insufficient to obtain, to suggest probable cause that a crime has occurred. So the district court said that it was the particular nature of the accident. The part would jump over a raised median on a highway that sort of gave the severity of the driver error. It's not that somebody was killed. Right. And it took this out of your garden variety accident. So I think that that is what the court said. And I think though that, you know, people can die from car accidents for reasons unrelated to drunken driving or anything else. I mean. Well, they can, they can, but when someone, you don't need certainty, you don't ironically, you don't need 51% for probable cause. And if someone jumps over a raised center median on a highway and kills someone, isn't there at least a fair probability that this may get and get you into the realm of some kind of a vehicular criminal offense? I don't think so, Your Honor, unless there's some fact to suggest that the reason the car jumped over the median was a criminal cause rather than simply, you know, a deer hitting the car or another car swerving in front of the car or, or you know, a hundred other things that could contribute, you know, if, if, if this warrant had given some hint of why the car jumped the median, then I think this would be a different case. That's always going to be the case, right? That with a, with a warrant, there could be all manner of different possibilities short of criminal activity. But I don't know how that addresses the fact that given the context that this might suggest, would suggest, or at least implicitly suggest a criminal offense had occurred. Well, I don't, respectfully, Your Honor, I don't know what facts suggest a criminal offense. The fact that someone died is not, you know, by itself indicative of a crime. It's indicative of a serious car accident, and that is described in the warrant, but, but that's not, you know, by itself, you know, a reason to think Well, we don't need conclusive evidence, right? We just need probable cause, as Judge Harris indicated, something less than 50%. So why isn't the, looking at the entire context sufficient to arrive at that reasonable conclusion? Well, because I think there's just nothing in this warrant that differentiates it from any other car accident. So if this is enough to get a warrant to search the EDR. In fairness, I mean, it differentiates it from most car accidents in which nobody dies and nobody jumps over a center median. It's not like this was a fender bender. No, Your Honor. So all of those accidents are distinguished. I apologize. What I meant is it doesn't distinguish it from any other serious car accident. And I think there are many, many reasons that a serious car accident can occur. And I think the affidavit has to give at least some reason to believe that in this particular case, the serious car accident occurred because of something or else, you know, may have contributed to that accident. But I see I'm almost out of time. So if I may, I'd like to reserve, unless Your Honor has a question. When was this warrant obtained? I believe it was either at the end of June or early July of the. When was the accident? Early June. This was about three weeks after the accident. So by the time they obtained this warrant, did they have the alcohol test back? I am not sure, Your Honor. I don't know the answer to that question. If they had, certainly if they put that in the warrant, that would be a much different story. There would be no argument there. I think that this was not probable cause, but it's not in the warrant. And I'd like to reserve the rest of my time if I may, Your Honors. Thank you. May it please the court. I'm Hollis Wiseman representing the government. I hope I'm the right distance from the microphone. That sounds good so far. Let me just answer the question that you asked, Judge Motz, about the timing of the two warrants. The crash occurred on June 5th. The warrant for the event data recorder was obtained on June 26th. Okay. I have a question about that too. Do you have the JA in front of you? Yes. If you go to JA 48, it talks about the beginning. This is the transcript of the telephone conversation with the magistrate judge. And the officer says at the beginning, it's all right. No, it's the magistrate judge says, it's June 6th, 12, 23 a.m. And then the witness at the bottom of the page, in the last paragraph on the page, says, so Your Honor, on December 6th, 2017. Do you understand? Yes. So what's going on? I think it was just a mishearing of the recording. Nobody ever said anything about it. It just seemed a little weird. Yeah. Well, it couldn't have. I don't think we have that much. And it also is, if it's at 2259, so it wouldn't be even June 6th, it would be June 5th, right? That's correct, Your Honor. I don't know why the transcript came up that way. The written transcript. It sounds like maybe the, it looks like the officer said December when he meant June, and he just had the date wrong. I believe so. He switched from. Well, so this raises a question. I mean, this is a weird case, because we don't actually have a warrant or an affidavit, as your colleague pointed out. And we should, right? Under Rule 4.1, the police are supposed to actually write out a warrant, right? And then you call, and you read it verbatim, and you get permission to sign it for the magistrate. Your Honor, the rule requires that there be a record made. It does not require that it be in writing. And these oral transcripts, or these oral requests and conversations, go into the court system. They're in the court file. You don't have to prepare the duplicate original of a complaint warrant or summons? I think that is commonly done, but as. I think it's commonly done because you have to do it under Rule 4.1. The practice in this district has been that the oral conversations, which are filed with the court, suffice. I mean, if it says in writing, I have not noticed that, because this has been going on for several years, since the Dave McNeely case. Your Honors, the government submits that the blood warrant is sufficient. It is sufficiently particular. It contains probable cause. But we stand on our first argument in this case, which is that there were exigent circumstances. The police did not even have to call the court to get a warrant. But they did. So, I struggle to understand how you can say that the exigent circumstance exception would apply when it only applies when the police don't get a warrant. Right. So, by definition, it doesn't apply here. Well, if you look at the definition of exigency, it's urgency. And no court has ever said that exigency means impossibility. In this case, it was not easy for the police to do this. It did take time. They did it because they wanted to make sure there were no problems with their investigation. But think about the facts of this case compared with McNeely and compared with Schmerber. This was a case where the police came upon the scene of a busy highway. There are two cars that are smashed to smithereens. One car, the defendant's vehicle, hit the other car with such force that the engine dropped in one place and the chassis kept going. There are two injured people. There's one dead woman in the car still. And there are a lot of people on this highway trying to go, trying to travel. So, that's not like the case in McNeely, where it was somebody weaving down the roadway, no accident. It is much more like the case in Schmerber versus California. And the urgency that the police had to do everything, the investigation, the protection of the people, the getting medical care for the two injured people, as well as dealing with the body of the deceased. All of that amounted to an urgency. Well, and that's what I just said. But that only suggests that perhaps that urgency might excuse what should otherwise have been a dotting of the i's and crossing of the t's when it came to the warrant. Not that the exception to the warrant requirement would apply when, in fact, the police got a warrant, even if it was an oral warrant. It's, in fact, under Maryland law, Your Honor, the blood test would not have been allowed because it was beyond the Maryland two-hour time limit. Well, that's another thing that's just to me, doesn't that sort of undercut your emergency argument, two hours of a lapse? Well, as the court said in McNeely, the blood is still metabolizing the alcohol. Yeah, yeah, I'm not saying it's invalid. I'm just saying that maybe it suggests there isn't an emergency. It's triggering the emergency exception to the warrant requirement. That it, I guess I don't understand. Well, it took them two hours to do it, right? So they had two hours to get a warrant, and they got a warrant. Yes, Your Honor. So both of those things suggest to me that there's no need for saying that this is an emergency here. I mean, I just think it undercuts your argument that there is an emergency and you didn't need to get a warrant when, A, you had two hours, and, B, you did get a warrant. They, but they were trying to gather the evidence to make sure they had the probable cause to do all the other things they had to do during that period of time. But you're defaulting what they did. It doesn't matter. I'm sure you have other arguments you want to make, and go ahead and make them. Well, and that's our first argument, that the police went way beyond what they had to do by even calling the magistrate. Our second argument is that this oral warrant, which we submit is allowed under the rules, was, contained the probable cause and contained the particularity that is required. So what do you think the warrant allowed the police to screen the blood for? Drugs and alcohol.  Because the office... I don't get that. We're talking about, just in reading the warrant and the transcript, it seems like they're talking about DUI. Well, the words that took up much of the hearing before Judge Zinis was drugs and possibly PCP. Right, right. But we don't measure what the warrant means by what was said at the suppression hearing. We measure it by what's in the warrant. Well, that's what's in the warrant. Well, the warrant says, the officer said, when officers arrived, Mr. Blakeney was behind the wheel in the vehicle. He was removed from the vehicle with a heavy odor of alcohol and possibly PCP. But in ruling for you, right, the district court said, I'm taking out the reference to PCP. We're taking that out because of that Frank's argument. So it's gone. So she, right, she found an ambiguity in that. But for purposes of the analysis, she found that the odor of alcohol was sufficient. And your understanding is that the district court thought the odor of alcohol was sufficient to allow a screen of the blood for alcohol and also drugs? Yes, Your Honor. That was just always done. God, so many things are always done here. When blood is tested, whether it's at a lab or a hospital or a medical examiner's office, as in this case, they screen for any kind of alcohol or drug. Well, the Supreme Court said in Birchfield that if there's suspicion of DUI, you can test for blood. I'm sorry, you can test the blood for alcohol. And then if there's some reason to believe, in addition, that there might be drugs involved, you could also do a screen for drugs. But the Supreme Court seemed to suggest the mere fact that you thought someone was drunk was not enough to screen their blood for drugs. I think what they said was if you first screen or do a breathalyzer test for alcohol and that comes up negative, now you might have reason to believe it wasn't alcohol, it was drugs. So now you can test for drugs. I didn't understand the Supreme Court to be saying, whenever you think someone is driving drunk, you can also search them for drugs. Well, if I recall correctly, Judge Harris, Birchfield was a breath test. And a breath test is only alcohol. No, I understand. But in addressing the argument that was being made there, we should always be allowed to screen for blood. And that's better. We should always be able to do a blood draw and screen the blood. And that's better because we can also look for drugs. The Supreme Court said not so fast. If you have some reason to believe that this is not just alcohol but also drugs, then you can go get a warrant and do that. Well, I... But your understanding is that whenever there's probable cause that someone is driving drunk, there is also probable cause to search for drugs. Probably not in every single case. There are times that somebody just seems to be so drunk on alcohol. And that's something that a lot of people understand. Very heavy smell of alcohol in the car. Yes. So why isn't this that case? It certainly could be. I would concede that point, Judge Harris. So then you're not reading the warrant. I'm just trying to figure out... Your argument is this warrant is sufficiently particularized. So you think that the warrant is properly read to allow for a search of drugs and alcohol, but the part where it allows for a search for drugs is probably invalid. I can understand that argument, and I would be willing to concede it. But as Judge Motz pointed out a few minutes ago, the judge asked a test to determine alcohol. And then ultimately said, I find probable cause. That's why I thought that was going to be your answer to my first question, that you thought what this warrant authorized was a search for alcohol. Yes, Your Honor, I think it does. And that's what was done in this case. Well, no, they actually did screen the blood for drugs. That's why I'm asking all these annoying questions. Um, and only found alcohol. I do know that. So is anything else tested for in this test? No. Like DNA? No. Would you have tested for DNA here? Probably, based on the cases dealing with DNA searches. You think the warrant allowed a DNA search? I just don't think we get to that point, because it wasn't done, it wasn't contemplated. But the question, the whole question in the case is, is this warrant sufficiently particularized? And you standing up here can't seem to tell me what it authorized a search for. That seems troubling. I mean, when you just said to us that they could have, on the basis of this warrant, tested for DNA, that opens up the whole world of horribles that your colleague talked about. Well, in some of these, when one looks at the other warrants, a warrant for drugs doesn't say the drugs may be seized and then tested to see if it's cocaine. A warrant for documents, as in many of the cases cited by the defense, doesn't say, seize the documents and then read them, and then check the handwriting and do a handwriting comparison. And then maybe fingerprint them and see who touched them. See if there's DNA on that. All that is always known in law enforcement to be something that can be done and is done. And I think that this blood is like drugs. There was an assumption, based on common practice, that this would be tested further. Nobody was thinking that it would be tested further. They were simply looking for the alcohol. Who would it be tested for at the end of your sentence? For DNA or HIV or anything like that. But according to you, it could have been. This warrant gave the government the authority to do that. I think the warrant is probably limited. I think the warrant is limited to what they were looking for in this case. And the probable cause was for a homicide case, a manslaughter case. And therefore, the search and the seizure, or the seizure and the search, would be for evidence of the homicide, which would be drunk driving, reckless driving. Well, DNA might tell you whether you had a history of having these terrible accidents under a different name or something. I mean, you know, I'm just quite surprised that the government says that this warrant would give them the authority to do DNA tests. I mean, is that necessarily your argument? Or are you possibly arguing... I mean, it sounds sort of like you're arguing that's not a separate test. That's not a separate search. It doesn't interfere with the reasonable expectation. That once you have the blood, screening it for... I don't understand what your argument is. I'm sorry. I don't mean to try to put words in your mouth when I can't even articulate it. There are cases, some circuits suggest it is not a separate search. Some do. This court... In a case out of our district a few years ago... Just talk a little tad louder. Excuse me? Just talk a tad louder. A little louder. I'm sorry. Well, in the case of United States v. Minick, which was mentioned in, I believe, the defendant's brief, it was a case out of the district court in which the district judge said the items could be seized if they in some way relate to those offenses. And I think that's true for the search as well. It's got to relate to the offense that there's probable cause for. And in this case, Judge Zenas found probable cause to believe there was evidence of alcohol or there might be evidence of alcohol or intoxication. And therefore, that's what the search was for. That's what the police could do. And your representation to us is that there wasn't further search for DNA or anything else? That's correct. That's correct. And our final argument as to the blood is that the police did everything they could to make sure that their evidence would comport with the Constitution. And that is the whole purpose of good faith. There is nothing to deter in this case by suppressing the evidence, as Judge Zenas realized. And we want to encourage the police to call the judge whenever possible and get a warrant. And therefore, the lee on good faith exception applies, even if the court found the warrant lacking in some way. As to the event data recorder search, Your Honor, which was done in the District of Columbia about two and a half weeks after this, the police officer wrote in his affidavit that the Nissan was going westbound, the Chrysler was going eastbound. And then he says at J83, the Chrysler crossed over the raised curb center median and struck the Nissan head-on causing extensive damage to the front end and passenger sides of both vehicles. There is absolutely nothing to be gained if the police officer had added a sentence to that paragraph that said, and I think there's probable cause to investigate the crime of reckless driving. Well, nothing to be gained except complying with the Constitution's requirement of particularity. But the Constitution requires particularity, and that's present in that paragraph, in paragraph five. What's the offense in that description? Involuntary manslaughter. There's no mention of manslaughter in there. But the facts provide that. What facts? You just read the facts. I didn't see any mention of homicide, any mention of manslaughter. A car jumped the median, that's it. The affidavit also said, on paragraph four, the front seat passenger of the Chrysler was pronounced dead by PG County. So there is a death. There is a death that occurred as a result of this accident. That's clear in paragraph four. Paragraph five explains the facts of the crash that shows the Chrysler was at fault. And the judge could put that together. The police officer could put that together. The forms that we usually use in the U.S. District Court, in Maryland at least, have a line for that. This came out of Superior Court, but that doesn't change the fact that the probable cause is there for Judge Bailey to have determined that there was probable cause to believe an involuntary manslaughter had occurred. Do you concede that you have to have particularity, you have to identify the crime at issue? You have to... To meet the particularity requirement? Yes, but you don't have to say what the statute is or name the crime. But I'm not so sure you even have to... I mean, I think the facts have to show the probable cause for that. And I think... I just want to make sure you understand my question. Does the particularity requirement require the police to put in the warrant some way to identify the crime? No. The Fourth Amendment says that... And no warrant shall issue but upon probable cause particularly describing the items to be seized and to be searched. So if you just say... That particularity only goes to the seizure. Yes. But I think... I know our forms usually have that line to list the statute that wasn't present in this D.C. form, but the facts support probable cause and the judge was perfectly capable of figuring out there was probable cause to believe the crime occurred. But he didn't have to, right? That particularity requirement does not require... No. You already gave me your answer to that. That's correct. Okay. I just want to make sure I know your red light is on, but just very quickly that I understand that if you're searching an EDR necessarily and intrinsically, all you're going to get out of that is evidence about how the car was being operated for the five seconds before the crash? Exactly. The paragraph seven. There's no DNA in there. Right. So can I ask you about this particularity issue? We have cases I thought that suggest that if a crime is identified in a very broad fashion without a particular reference to a subsection of a statute like fraud, just general fraud or a tax violation, we have found those warrants to be deficient because they weren't sufficiently particular. So how is a warrant that fails to identify any crime sufficient as a matter of constitutional law? Well, I just have not seen a case that says that the warrant has to particularize the statute. I mean, a general fraud... Well, that may be. But if you have a general allegation of fraud in a warrant and we have suggested that that by itself isn't sufficient to satisfy the particularity requirement, how does a warrant that says nothing at all about the crime sufficient? But it does. It lists the probable cause in this case to think that there was driving action that led to someone's death. And that's what manslaughter is. I think I thought that your answer to Judge Moss was that a warrant has to be particular in that it has to particularly describe what you're going to seize. One way a warrant can do that is to describe with particularity what the offense is. So you can say, go in and search for evidence of cocaine distribution on a large scale. And that will be sufficient to be clear about what you're supposed to look for when you get there. The other way you can do it is just by describing the evidence. Go into the house and search for cocaine, scales, guns, and large amounts of currency. And that's another way you can particularize a warrant. So I thought your argument in this case in response to Judge Moss was we don't need to particularly describe the offense because we have particularly described the evidence. Go search the EDR for the evidence of how the car was being operated for the last five seconds. So it doesn't matter why we want it. We've told you what to search for. Why isn't that your answer? I thought that's what you said to Judge Moss. That is, Your Honor. That is what I said. I was just trying to answer Judge Diaz's more general question, and I didn't have it. In answering Judge Diaz, you said you'd never seen a case. Well, what about this case cited in the brief for the defendant here, United States v. F.A.W.O.L.E.? And the quote is that a warrant must confine the executing officer's discretion by allowing them to seize only evidence of a particular crime. Exactly. And that can be done by listing, as this warrant does, listing exactly what's going to be seized in the EDR extraction. Thank you, Your Honors. Thank you very much. Mr. McBeth, do you have any rebuttal? Yes, Your Honor. Thank you. Just briefly, a couple points. Mr. McBeth, do we need to cite chapter and verse of a statute to satisfy the warrant requirement? No, Your Honor. There doesn't have to be a statutory citation. That's not our position, but some description of what the offense is, you know, vehicular homicide or something like that would be sufficient, but not a... It would be sufficient, but why is it necessary? If a warrant is issued saying, go into this house and search for the following hand grenade. It looks like this. It's this size. Go get that hand grenade. Why does it matter what the offense is? Like you've explained to us very nicely the purposes of the particularity requirement so that the executing officer knows what to look for when he goes into the house, he or she. So why does it matter that the executing officer also know what the crime is? So I think in a warrant that provides that level of specificity, it would not be required. So I'm not taking the position that across the board in every warrant, there must always be a crime, but if there isn't that level of specificity, then there needs to be something to cabin the discretion of... Right. You can't have a warrant that just says, go search for evidence of a crime. Correct. If it's going to be that kind of a warrant, an evidence warrant, then you better say evidence of what crime. Correct. And that actually brings me to one of the points I was going to make, which was your question earlier, Judge Harris, about, well, can't we just read this? Going back to the blood draw warrant, can't we read it sort of in context with the affidavit and assume that the officer knew what the blood was to be tested for? And so I want to point the court to two cases. One is the United States v. George case from the Second Circuit that we cite in our brief. In that case, the affidavit described a robbery. It listed specific items of evidence to be seized from the robbery. You know, a purse, a mask, keys, and then there was a catch-all final category that said, and then the other evidence of a crime. And the Second Circuit said that that part of the warrant was insufficiently particular. And so anything that wasn't specifically listed in the warrant in that first part could not be seized under the warrant, notwithstanding that it's very clear from the affidavit, it's very clear from the warrant itself that the other items, the other crime at issue here was robbery. And so in the blood draw context where we don't even have the word vehicular manslaughter or DUI or anything in the affidavit, George is, you know, it's an even stronger case for us because there's no crime of any kind listed in that affidavit. And the second case I wanted to point to was the Ninth Circuit's opinion in the United States v. Cow, K-O-W. And in that case, the warrant had sort of 12 broad categories of documents, but they weren't very particularly described. In the supporting affidavit, under the part of the affidavit that said items to be seized, those same broad categories were described. But then elsewhere in the affidavit, the affidavit wasn't very particular. He said things like the tax ID number of the business, the names of the foreign companies that this business had been embezzling money from, the bank account number for the business. All those particular facts were in the affidavit, but not listed as items to be seized. And the Ninth Circuit said, notwithstanding that those are imposed in the affidavit, it can't be used to correct the unparticularized warrant because they weren't asking for permission to seize those particular pieces of information. So I think in both of those cases, we have even more particular warrant and affidavit than we have here for the blood draw warrant. And the final point I want to make is that you asked government counsel, what is this blood draw warrant for? And she said, drugs and alcohol and maybe DNA. And I think the fact that we're here arguing about what this warrant permits a search for is sort of indicative of the fact that it doesn't particularize the search sufficiently. And the whole point of the particularity requirement is to avoid the sort of ex post facto guessing about what a warrant is for. It's supposed to say exactly what a warrant is for so that there is no discretion left to the executing officer. And if we're here arguing about what's in the warrant and what's not, whether DNA can be taken, I think that's a good sign that the warrant is not particularized enough. Can I ask you a question? So on the particularity point for the alcohol, the screen of the blood, do we have anything, is there anything like kind of an exigency light doctrine that would allow us to say, like maybe there were an exigent circumstances here sufficient to excuse getting a warrant. But you know, come on, standing in the highway in the middle of the night, dead bodies are being taken out of cars. There's a lot going on. And if the warrant ended up being a little more colloquial than we would normally like, we're going to let that go here because of the circumstances. Do you know what I'm saying? I understand your point. I am not aware of any case that says that and the government hasn't cited one. And to go back to your question to the government about this being an exigency, the definition of an exigency is that there's no time to get a warrant. So if they got a warrant. When the Supreme Court talks about it, I know there was at least one case where they said, you know, there might literally be time to call a magistrate, but not time to sort of fully comply with Rule 4.1. And we're going to call that an exigency. And it sort of looks like that's what happened here. Well, so we're not raising a complaint about the paper form of the warrant or anything. But I think the important response to that is the extra burden on the applicant in this case would literally be a two-second statement that, Your Honor, we want to test his blood for blood alcohol. That's it. There's just no showing on this record that there was no way for the applicant to add those extra 10 words to the affidavit. And in McNeely, when the Supreme Court talks about exigency and it says that the availability of technology is one factor in the analysis, they say that that is so because we want to preserve the ability to test without undermining the role of a neutral magistrate. And if we start sort of doing this exigency light, you know, reasonableness analysis, I think that's exactly what we're doing is we're taking away from the requirement that's been strictly applied that a warrant described things to be searched for. So, no, I think the answer, Your Honor, is no, I'm not aware of that. And certainly the government has not cited any case to that effect. Unless Your Honors have any more questions. We will come down and see a load of the lawyers and then go directly to our last case. And we're happy to have everybody stay, but if you're going to leave, maybe quiet.
judges: Diana Gribbon Motz, Albert Diaz, Pamela A. Harris